UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBERTO MATA FUENTES,<br><br>Petitioner,<br><br>v.<br><br>SAMUEL J. OLSON, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigrations and Customs Enforcement*; KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; TODD LYONS, *in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement*; PAM BONDI, *in her official capacity as Attorney General of the United States*; and JOEL BROTT, *Sherburne County Sheriff*,<br><br>Respondents. | Case No. 25-cv-4456 (LMP/ECW)<br><br>**ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER** |

Gloria Leticia Contreras Edin and Soloman Daniel Steen, **Contreras Edin Law, P.A., St. Paul, MN**, for Petitioner.

David W. Fuller and Ana H. Voss, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

A familiar story is playing out in immigration courts across the country. The Department of Homeland Security ("DHS") detains a noncitizen present in the United States—sometimes for years—and initiates removal proceedings. For decades, it was established law that such a noncitizen is entitled to a bond hearing before an immigration judge. *See Pizzaro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *8 (E.D.

Mich. Sept. 9, 2025). But in recent months, DHS and the Board of Immigration Appeals ("BIA") have taken the position that immigration judges "lack authority to hear bond requests or to grant bond" to noncitizens who are unlawfully present in the United States who are, instead, "subject to mandatory detention." *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 225 (B.I.A. 2025). Faced with the prospect of mandatory detention *en masse*, noncitizens have turned to the federal courts for habeas relief to secure bond hearings. That is what Petitioner Roberto Mata Fuentes has done here.

The Government[1] has now been told nearly 300 times (and counting) that its mandatory-detention scheme is unlawful. *See Demirel v. Fed. Detention Ctr. Phila.*, Civ. No. 25-5488, 2025 WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025) (citing an appendix identifying 282 district court decisions rejecting the Government's interpretation of the relevant statutory provisions as of November 18). Yet as this case illustrates, the Government has not taken "no" for an answer.

Mata Fuentes was detained by DHS after living in the United States for two decades. The immigration judge presiding over Mata Fuentes's removal proceedings denied him a bond hearing, citing the BIA's recent about-face in *Yajure Hurtado*. ECF No. 12 ¶ 8. Mata Fuentes now brings a petition for a writ of habeas corpus and a motion for a temporary restraining order ("TRO"), alleging that the denial of a bond hearing is illegal under the Immigration and Nationality Act ("INA"). ECF Nos. 1–2. Because Mata Fuentes is plainly

---

[1] When used in this Order, "Government" refers to the federal officials named as Respondents. Respondent Joel Brott, the Sherburne County Sheriff, has not participated in these proceedings.

correct—as recognized by the "overwhelming majority" of courts to consider the issue, *Sales Ambrocio v. Noem*, No. 4:25CV3226, 2025 WL 3295530, at *6 (D. Neb. Nov. 25, 2025) (citation omitted)—the Court grants the TRO and orders the Government to provide Mata Fuentes with a bond hearing within 7 days of the date of this Order.

## BACKGROUND

Mata Fuentes is a Mexican national who entered the United States without inspection more than 20 years ago. ECF No. 1 ¶ 17; ECF No. 1-1 at 2. Since arriving in the United States, Mata Fuentes has lived in Minnesota and remained law-abiding. ECF No. 1 ¶¶ 59, 62; ECF No. 1-1 at 3 (DHS's records noting that Mata Fuentes "has no criminal history in the United States"). Mata Fuentes is married and has three children who are American citizens. ECF No. 1 ¶ 61.

Mata Fuentes has taken steps to adjust his immigration status. In March 2024, Mata Fuentes applied for a U visa, ECF No. 1-1 at 3, which is a "type of non-immigrant visa available to crime victims who assist law enforcement," *Caballero-Martinez v. Barr*, 920 F.3d 543, 545 (8th Cir. 2019). In May 2024, Mata Fuentes was granted a bona fide determination on his U-visa application, which entitled Mata Fuentes to a work permit and "deferred action" while he waits for a U visa to become available. ECF No. 1 ¶¶ 2, 47, 49–51.

On the morning of October 30, 2025, Immigration and Customs Enforcement ("ICE") encountered Mata Fuentes and arrested him. *Id.* ¶ 3; ECF No. 1-1 at 2. DHS initiated removal proceedings against Mata Fuentes, and he remains detained at the Sherburne County Jail pending those proceedings. ECF No. 1 ¶¶ 58, 60. Mata Fuentes

sought bond and release during the pendency of his removal proceedings. *Id.* ¶¶ 5–6. DHS denied bond, ECF No. 1-1 at 3, and, on November 18, 2025, relying on the BIA's recent decision in *Yajure Hurtado*, an immigration judge found that he lacked jurisdiction to consider Mata Fuentes's request for bond, ECF No. 1 ¶¶ 5–6; ECF No. 12 ¶ 8.

On November 25, 2025, Mata Fuentes brought the present habeas petition, alleging that he is entitled to a bond redetermination hearing under 8 U.S.C. § 1226(a). *See* ECF No. 1. Mata Fuentes also suggests that his detention is illegal because his detention is punitive and because he has deferred action from removal by virtue of a bona fide determination on his U-visa application. *See id.* ¶¶ 85, 101–06. Mata Fuentes brings statutory and constitutional claims and claims under the Administrative Procedures Act ("APA"). *See id.* ¶¶ 70–106. As a remedy, Mata Fuentes asks the Court to order the Government to "release [him] or provide [him] with a bond hearing pursuant to 8 U.S.C. § 1226(a)." *Id.* at 28. Along with his habeas petition, Mata Fuentes brought a motion for a TRO. ECF No. 2.

The Court ordered the Government to answer the petition no later than December 3, 2025, with any reply by Mata Fuentes due by December 8, 2025. ECF No. 9. Both the Government and Mata Fuentes have now provided that briefing.[2] *See* ECF Nos. 11, 13.

---

[2] The Government represents that no hearing is needed in this matter, ECF No. 11 at 32, and Mata Fuentes makes no request for a hearing, so the Court decides the motion on the papers.

4

## ANALYSIS

The "standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). A party who requests a preliminary injunction must establish that: (1) he is likely to succeed on the merits of his claims; (2) he is likely to suffer irreparable harm without preliminary relief; (3) the balance of equities tips in his favor; and (4) the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### I.  Likelihood of Success on the Merits

Although the essence of Mata Fuentes's petition and TRO motion is that the Government has wrongfully denied him a bond redetermination hearing, portions of Mata Fuentes's petition and TRO motion could be construed as challenging his detention generally. In the interest of completeness, the Court addresses both arguments.

#### a.  Bond Redetermination Hearing Claim

Mata Fuentes argues that the Government illegally subjected him to the mandatory detention provisions of 8 U.S.C. § 1225(b)(2), rather than the discretionary bond provisions of 8 U.S.C. § 1226(a). ECF No. 1 ¶¶ 71–74, 79–81. The Government asserts that the Court lacks jurisdiction over Mata Fuentes's petition and that, in any event, Mata Fuentes is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Government is wrong on both scores.

##### i.  Jurisdiction

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held

5

'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001). However, within constitutional bounds, the jurisdiction of the federal courts is set by Congress, *see Bowles v. Russell*, 551 U.S. 205, 212–13 (2007), and Congress has declared that federal courts have no jurisdiction to hear any case brought by a noncitizen "arising from the decision or action . . . to commence proceedings, adjudicate cases, or execute removal orders," 8 U.S.C. § 1252(g). The Government argues that this provision deprives the Court of jurisdiction over Mata Fuentes's habeas petition. ECF No. 11 at 14–18.

That is not so. The Supreme Court has explained that this provision is narrow—it applies "only to three discrete actions" that the Government may take: the "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (emphasis omitted); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018) (explaining that the "arising from" language in Section 1252(g) "refer[s] to just those three specific actions themselves"). Here, Mata Fuentes does not challenge the decision to commence removal proceedings; rather, he challenges the legality of his detention, which is "independent of, and collateral to, the removal process." *Öztürk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025); *see Aguilar Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1145 (D. Minn. 2025) (observing that "custody proceedings are independent of 'commencing' removal proceedings under § 1226"). Nor does Mata Fuentes seek to interfere with the Government's adjudication of

6

his case; he is not, for example, asking this Court to adjudicate his pending application for cancellation of removal. ECF No. 12 ¶ 9. And Mata Fuentes cannot be challenging a decision to execute a removal order, given that Mata Fuentes has no removal order to execute. Because Mata Fuentes's bond redetermination hearing claim does not challenge the "three discrete actions" listed in Section 1252(g), his claim is not barred by that provision. *AADC*, 525 U.S. at 482.

The Court would be remiss not to note that nearly every judge in this District has rejected the Government's invitation to apply Section 1252(g) to analogous claims. *See Santos M.C. v. Olson*, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2 (D. Minn. Nov. 25, 2025) (Schiltz, C.J.); *Jose J.O.E. v. Bondi*, No. 25-cv-3051 (ECT/DJF), 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (Tostrud, J.) *Andres R.E. v. Bondi*, No. 25-cv-3946 (NEB/DLM), 2025 WL 3146312, at *2 (D. Minn. Nov. 4, 2025) (Brasel, J.); *Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) (Menendez, J.); *Eliseo A.A. v. Olson*, No. 25-cv-3381 (JWB/DJF), 2025 WL 2886729, at *5 (D. Minn. Oct. 8, 2025) (Blackwell, J.); *Avila v. Bondi*, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *4 (D. Minn. Oct. 21, 2025) (Tunheim, J.); *E.M. v. Noem*, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *2 (D. Minn. Nov. 12, 2025) (Nelson, J.).

The Government does not acknowledge this elephant in the room but instead urges the Court to follow the single decision in this District applying Section 1252(g) to analogous claims. *See Acxel S.Q.D.C. v. Bondi*, No. 25-cv-3348 (PAM/DLM), 2025 WL 2617973, at *2 (D. Minn. Sept. 9, 2025). Respectfully, *S.Q.D.C.* is an outlier in this District

7

and is unpersuasive because it relies on an unduly broad interpretation of Section 1252(g) that the Supreme Court rejected in *AADC*. That much is clear in *S.Q.D.C.*'s conclusion that the petitioner's claims "do not fall within the *narrow exception* to § 1252(g)." *Id.* (emphasis added). But that gets things backwards: it is not the exception to Section 1252(g) that is narrow, but Section 1252(g) itself. *See AADC*, 525 U.S. at 487 (confirming a "narrow reading of § 1252(g)"). This Court will therefore follow the overwhelming majority view in this District and proceed to the merits of Mata Fuentes's bond redetermination hearing claim.[3]

### ii. Section 1225(b)(2) vs. Section 1226(a)

As noted above, Mata Fuentes argues that he is being detained in violation of federal law because he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is instead subject to the discretionary bond provisions of 8 U.S.C. § 1226(a), which requires that he be given a bond redetermination hearing. Section 1226(a) generally provides immigration judges with the discretion to grant release on bond to noncitizens subject to removal proceedings. Section 1225(b)(2), however, provides an exception: "in the case of a [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled

---

[3] The Government also asserts that Mata Fuentes should not have asserted certain claims against certain Respondents. ECF No. 11 at 18–20. The Government has made this argument before, and the Court rejects it for the same reason as Chief Judge Schiltz and Judge Menendez: "so that the Court can be certain that its order applies to whichever defendant is responsible for making a decision on [Mata Fuentes's] bond-redetermination request." *Santos M.C.*, 2025 WL 3281787, at *4 n.5 (citing *Belsai D.S.*, 2025 WL 2802947, at *3 n.2).

to be admitted," the noncitizen must be detained during the pendency of their removal proceedings.

The question, then, is whether Mata Fuentes—who has been continuously residing in the United States for two decades—is an "applicant for admission" who is "seeking admission." The Government echoes DHS's and the BIA's conclusion that any noncitizen who is unlawfully present in the United States is an "applicant for admission" who is "seeking admission" and therefore subject to mandatory detention under 8 U.S.C. § 1225(b)(2). ECF No. 11 at 21–27.

As noted above, the precise argument that the Government makes here has been roundly rejected nearly 300 times by federal courts across the country. *See Demirel*, 2025 WL 3218243, at *4 (collecting 288 cases, as of November 18, 2025, addressing the same legal issue presented here and observing that the Government lost in 282 of those cases). Notably, every district judge in this District to consider this question on the merits has rejected the Government's argument. *See Santos M.C.*, 2025 WL 3281787, at *3 (Schiltz, C.J.); *Andres R.E.*, 2025 WL 3146312, at *2–3 (Brasel, J.); *Belsai D.S.*, 2025 WL 2802947, at *5–6 (Menendez, J.); *Eliseo A.A.*, 2025 WL 2886729, at *3–4 (Blackwell, J.); *Francisco T. v. Bondi*, No. 25-cv-3219 (JMB/DTS), 2025 WL 3236513, at *2–3 (D. Minn. Nov. 19, 2025) (Bryan, J.); *Avila*, 2025 WL 2976539, at *5–6 (Tunheim, J.); *E.M.*, 2025 WL 3157839, at *3–8 (Nelson, J.).

This Court sees no reason to depart from the compelling opinions of its colleagues. As already amply discussed by judges in this District, the plain language of Sections 1225(b)(2) and 1226(a), read in context with other provisions of the INA, and as supported

9

by consistent agency practice, legislative history, and dicta from the Supreme Court's decision in *Jennings*, lead to the conclusion that a noncitizen who is present in the United States for decades is not "seeking admission" under 8 U.S.C. § 1225(b)(2). The Court need not add more to the persuasive analyses already undertaken by hundreds of federal judges. Mata Fuentes, who has been living in the United States for 20 years, is therefore likely to succeed on his claim that he is not subject to mandatory detention.[4]

Because Section 1226(a)—not Section 1225(b)(1)—applies to Mata Fuentes's case, he is likely to succeed on his claim that he is entitled to a bond redetermination hearing before an immigration judge.[5] *See* 8 C.F.R. § 1236.1(d)(1); *Jennings*, 583 U.S. at 306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings

---

[4] Despite vigorously protesting Mata Fuentes's right to a bond hearing, the Government asserts that the petition should be denied because Mata Fuentes already received a bond hearing. ECF No. 11 at 1–2. What bond hearing? The hearing which Mata Fuentes received was not actually a bond hearing; rather, the immigration judge denied bond to Mata Fuentes because he (erroneously) believed that he lacked jurisdiction to provide that relief at all pursuant to *Yajure Hurtado*. ECF No. 12 ¶ 8; ECF No. 1-3. Calling that hearing a "bond hearing" is disingenuous (at best) because the opportunity to receive bond was never actually on the table.

[5] Independently, Mata Fuentes may be eligible for relief based on a decision in a class action from the United States District Court for the Central District of California. On November 20, 2025, a federal district judge declared the Government's mandatory-detention scheme illegal, and five days later, it extended "the same declaratory relief granted" in the November 20 order to a class that appears to encompass Mata Fuentes. *See Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *4, 9 (C.D. Cal. Nov. 25, 2025). Because Mata Fuentes succeeds on his own statutory claim, the Court need not address whether Mata Fuentes is presently eligible for relief based on the decision in *Maldonado Bautista*. And to the extent that Mata Fuentes argues that *Maldonado Bautista* entitles him to immediate release, *see* ECF No. 13 at 2–5, he is incorrect. *See Maldonado Bautista*, 2025 WL 3288403, at *9 ("[A] classwide order declaring the DHS policy in violation of the class members' rights would not ensure their release on bond; it merely secures a right to an individualized hearing.").

at the outset of detention."). The Government's detention of Mata Fuentes without providing a bond redetermination hearing is, therefore, contrary to the "laws . . . of the United States." 28 U.S.C. § 2241(c)(3). The Government must provide a bond redetermination hearing to Mata Fuentes within 7 days of this Order. Failing that, any continued detention would be unlawful, and Mata Fuentes's immediate release would be required.

### b. Challenges to Detention Generally

In his habeas petition and motion for a TRO, Mata Fuentes squarely requested that the Court order the Government to provide him a bond redetermination hearing, a remedy to which the Court has found that Mata Fuentes is entitled. However, some portions of Mata Fuentes's petition and motion for a TRO could be construed as seeking immediate release from detention. *See, e.g.*, ECF No. 1 ¶ 86 (requesting the Court to "issue a writ of habeas corpus directing Respondents to release Petitioner"); ECF No. 4 at 14–16 ("Courts have granted release for similarly situated non-citizens under similar facts.").[6] At this juncture, Mata Fuentes has not demonstrated a likelihood of success on these claims.

To the extent that Mata Fuentes argues that his erroneous mandatory-detention classification under Section 1225(b)(2) warrants immediate release from detention, based on the ample case law reviewed by the Court, it appears that most courts confronting claims

---

[6] Some of this language may have been accidentally included in the petition. For example, Mata Fuentes requests that the Court "order him released according to the bond conditions set by the IJ." ECF No. 1 ¶ 100. But the immigration judge has not set any bond conditions because he determined that he did not have jurisdiction to consider Mata Fuentes's request for bond. *Id.* ¶ 17.

analogous to Mata Fuentes's order a bond hearing, not immediate release, as a remedy. *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (declining to order petitioner's immediate release as a remedy for being unlawfully barred from receiving a bond hearing and instead granting petitioner's request for a bond hearing); *Santos M.C.*, 2025 WL 3281787, at *3 (granting similar petition and ordering a bond hearing but denying relief "insofar as petitioner asks this Court to order his release"). That conclusion comports with the general rule that "the scope of injunctive relief is dictated by the extent of the violation established" and should be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]." *Nebraska v. Biden*, 52 F.4th 1044, 1048 (8th Cir. 2022) (citations omitted). Here, Mata Fuentes has not established that his detention is per se illegal, but that it is illegal insofar as the Government deprives him of a bond redetermination hearing. To afford complete relief, then, the remedy for that violation is to order the Government to provide Mata Fuentes with a bond redetermination hearing.

In passing, Mata Fuentes suggests several additional reasons why his detention generally is illegal; at this stage, none are availing. First, Mata Fuentes suggests that his detention is punitive in nature. ECF No. 1 ¶ 85; ECF No. 4 at 7–9. Noncitizens subject to civil immigration detention cannot be subjected to conditions that "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979); *see Angelica C. v. Immigr. & Customs Enf't*, No. 20-cv-913 (NEB/ECW), 2020 WL 3441461, at *14 (D. Minn. June 5, 2020), *report and recommendation adopted*, 2020 WL 3429945 (D. Minn. June 23, 2020). But the evidence Mata Fuentes presents in support of that claim—a DHS press release and a case

involving significantly dissimilar facts—is insufficient to demonstrate a likelihood of success on this claim.

Mata Fuentes points to language in an April 2025 press release from DHS: "The reality is that prison isn't supposed to be fun. It's a necessary measure to protect society and punish bad guys. It is not meant to be comfortable."[7] ECF No. 4 at 8. Although the press release speaks in harsh terms, its passing reference to punishment does not mean, as a legal matter, that Mata Fuentes's detention is "'punishment' in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). Moreover, that specific quotation in the press release related to CECOT, a prison in El Salvador that is "one of the most notoriously inhumane and dangerous prisons in the world." *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 518 (D. Md. 2025). Mata Fuentes is not imprisoned at CECOT, so it is unclear how any punitive detention measures at CECOT bear on his own detention in Minnesota. Mata Fuentes also points to a case in this District where a noncitizen's immigration detention was deemed punitive, but in that case, the noncitizen had demonstrated that he was detained as a result of his protected political speech. *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1158 (D. Minn. 2025). There is no evidence of retaliation for protected speech presented in this case.

Second, Mata Fuentes suggests that the bona fide determination on his U-visa application requires his release from custody. ECF No. 1 ¶ 6; ECF No. 4 at 16–17. There are a few reasons why this claim is unlikely to succeed on the present record and briefing.

---

[7] The full press release is available at https://www.dhs.gov/news/2025/04/30/100-days-fighting-fake-news [https://perma.cc/FNH4-P5X8].

As an initial matter, it is not entirely clear what legal theory Mata Fuentes relies on for this argument: his petition and reply brief frame this argument as an APA claim, ECF No. 1 ¶¶ 101–06; ECF No. 13 at 16–18, while his TRO motion frames the argument as a due process claim, ECF No. 4 at 16–17. Given the lack of clarity around the basic legal underpinnings of Mata Fuentes's claim, the Court cannot conclude that he has demonstrated a likelihood of success on that claim.[8] Moreover, even if Mata Fuentes was able to demonstrate that his detention was illegal because he has deferred action, he has not demonstrated why immediate release, as opposed to a bond hearing, is the appropriate remedy. *See Primero v. Mattivelo*, No. 1:25-cv-11442-IT, 2025 WL 1899115, at *5 (D. Mass. July 9, 2025) (finding that petitioner was illegally detained due to his deferred action but ordering a bond hearing as a remedy); *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *13 (W.D. Tex. Oct. 2, 2025) ("In the context of deferred action recipients, district courts have found both immediate release and a bond hearing to be appropriate remedies."). And more confusingly, Mata Fuentes seems to also request, as a further remedy, a "procedurally sound revocation of deferred action" prior to any future detention. ECF No. 13 at 17–18. Given the scant briefing provided to these issues, the Court cannot conclude that Mata Fuentes is likely to succeed in his argument that immediate release

---

[8] To the extent that the claim is presented as an APA claim, the Government is correct that precedent in this District suggests that such claims cannot be joined in a habeas petition. *See Canada v. Olmsted Cnty. Cmty. of Corr.*, No. 21-cv-2120 (NEB/DTS), 2022 WL 607482, at *8 (D. Minn. Mar. 1, 2022). But there is also precedent going the other way. *See Mohammed H.*, 786 F. Supp. 3d at 1159–61 (considering an APA claim in a habeas petition).

would be the proper remedy to redress this claim. As described below, Mata Fuentes may renew his argument as to the legality of his detention generally at a later stage of these proceedings.[9] However, in doing so, Mata Fuentes should be clear and consistent about (1) the legal underpinnings of his claim and (2) the remedy he seeks.

**II.     The Remaining *Winter* Factors Favor Mata Fuentes**

Having demonstrated a likelihood of success on his bond redetermination hearing claim, Mata Fuentes also demonstrates the remaining factors necessary to issue a TRO. As for irreparable harm, unlawful detention is a prime example of irreparable harm. *See Matacua v. Frank*, 308 F. Supp. 3d 1019, 1025 (D. Minn. 2018) (recognizing that "loss of liberty" is "perhaps the best example of irreparable harm"). That irreparable harm is magnified by the fact that Mata Fuentes has been separated from his wife and three children; to be unlawfully separated from one's family is to have life's most essential bond severed, leaving an injury that may well never be fully healed. *See Aguilar Maldonado*, 795 F. Supp. 3d at 1154 (finding mother's separation from her children presented "compelling facts in support of a finding of irreparable harm"); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 371 (S.D.N.Y. 2019) ("[C]ourts recognize the irreparable harms that stem from being unlawfully separated from family.").

---

[9]     As for the U-visa claim, the Court is not convinced that its previous decision in *Domingo M.M. v. Shea*, No. 25-cv-2830 (LMP/ECW), ECF No. 24 (D. Minn. Aug. 1, 2025), is relevant here. In that case, the petitioner had a final order of removal, *id.* at 13, which implicated 8 U.S.C. § 1252(g)'s prohibition against challenging the decision to "execute removal orders," a phrase which the Eighth Circuit has construed broadly, *see Silva v. United States*, 866 F.3d 938, 940 (8th Cir. 2017). But Mata Fuentes is not subject to a removal order, which means that provision of Section 1252(g)—as interpreted in *Silva*—does not apply here.

On the other hand, the Court considers the balance of harms to the Government and the public interest, which "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023). There is no discernable harm that the Government will suffer by granting Mata Fuentes a bond redetermination hearing. The only burden that the Government will endure is the requirement to follow the law— which is to say, no harm at all. *See League of Women Voters of S.C. v. Andino*, 497 F. Supp. 3d 59, 78 (D.S.C. 2020) (finding no harm to the government from having to follow the law because it "should be doing that anyway"); *Walter A. v. Berg*, No. 25-cv-4376 (PJS/DLM), 2025 WL 3296278, at *2 (D. Minn. Nov. 26, 2025) (explaining that "the public interest is served by ensuring that the Executive Branch follows the law").

Finally, the Court will not require Mata Fuentes to give security pursuant to Federal Rule of Civil Procedure 65(c), given that the public interest weighs in favor of restraining unlawful federal action and the restraint causes no hardship to the Government. *See Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'gs*, 826 F.3d 1030, 1043 (8th Cir. 2016).

To provide direction for next steps: Mata Fuentes's motion for a TRO is granted, and the Government must provide a bond redetermination hearing to Mata Fuentes within 7 days of this Order. Within 8 days of this Order, the Government must provide the Court a status update concerning the results of that bond hearing. After that, Mata Fuentes has three choices. First, he can bring a motion for a preliminary injunction or some other

motion or request to bring the habeas petition to final judgment.[10] Second, he can seek further extension of this TRO for good cause shown. *See* Fed. R. Civ. P. 65(b)(2). Third, if he does not wish to pursue his habeas claims further, the parties should move to voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a). Mata Fuentes must make that decision within 14 days of this Order, as the TRO will expire at that time. Fed. R. Civ. P. 65(b)(2).

## CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Mata Fuentes's Motion for a TRO (ECF No. 2) is **GRANTED** as follows:

    a. The Government is ordered to provide Mata Fuentes with a bond redetermination hearing under 8 U.S.C. § 1226(a) on the merits of his release within 7 days of the date of this Order.

    b. If the Government does not provide Mata Fuentes with a bond redetermination hearing as required by this Order, Mata Fuentes must be immediately released from detention.

    c. Within 8 days of the date of this Order, the Government shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Mata Fuentes's release.

---

[10]   Mata Fuentes may well decide not to pursue this claim if he is granted bond.

2. Within 14 days of the date of this Order, Mata Fuentes must decide how to proceed in this action, as explained above.

3. This TRO expires on December 23, 2025, at 11:59 p.m. CST, unless extended by the Court for good cause shown.

Dated: December 9, 2025  
Time: 9:15 a.m. CST

*s/Laura M. Provinzino*  
Laura M. Provinzino  
United States District Judge